# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed September 26, 1910.

CONSOLIDATED GAS, ELECTRIC LIGHT AND POWER COMPANY, ETC.,

VS.

CHARLES T. LEVINESS, JR., ET AL.

W. Calvin Chesnut (of Gans & Haman) for plaintiff.

Joseph C. France and A. S. Gill for Leviness and McCandlish, defendants.

W. H. Perkins for preferred stockholders, defendants.

STOCKBRIDGE, J.—

For many years the Consolidated Gas Company owned and occupied a lot on the east side of South street. Changes in the tide of business of the city rendered this location illy adapted for the uses of the company, and the offices which had for a long period been conducted at the location on South street were removed to Baltimore street. The fire of 1904 destroyed the improvements on the South street lot, which has since that time remained idle, unproductive and a source of continual expense to the corporation, and its successor, the Consolidated Gas, Electric Light and Power Company.

In the year 1910 the last named corporation, which had succeeded to the rights and property of the Consolidated Gas Company, entered into a contract of sale of the lot on South street for the sum of $50,000, and the purchaser has declined to carry out that contract for reasons hereafter to be named, and the bill in this case is filed to specifically enforce the contract.

Acting under the authority of the corporation law, the stock of the Consolidated Gas Company was of two kinds, common and preferred, and the objection of the purchaser to the title arises out of the language added to the provisions of the general law with reference to preferred stock, by the Act of 1880, Chapter 474.

This language was: "And the said preferred stock shall be and constitute a lien on the franchises and property of such corporation, and have priority over any subsequently created mortgage or other encumbrance."

The position of the purchaser is that the lot in question is by reason of this subject to a lien in favor of the preferred stockholders (some 600 to 800 in number), and that no title can be made to the property without the release upon the part of each preferred stockholder of the property in question from the lien created by this statute.

The act makes no provision for any representation of the preferred stockholders, and therefore the lien, whatever it may be, is one which inheres in each individual holder of the preferred stock.

The Act of 1880, its intent, character and scope, was very fully discussed by the late Chief Justice McSherry, in the case of Heller vs. Marine Bank, 39 Md., beginning on page 607, and a conclusion reached which is in effect that there is no lien created by this act as regards personal property, but that it does exist as regards real estate.

The opinion in this case is both learned and elaborate and yet it is impossible to see how, when the statute declares that the preferred stock shall constitute a lien on the franchises and property of a corporation, a distinction can logically be drawn such as the learned Chief Justice drew in that case.

The term property is broad enough to cover all property of whatsoever character, and I do not feel that the decision in. the Heller case is necessarily conclusive of. the present question, since there the question arose over relative priorities in the distribution of the assets of an insolvent corporation, while in the present case there is no question of insolvency involved.

Moreover, as was ably pointed out in the Heller case, the mere calling of a thing by a well recognized name can not alter the nature of that to which a misnomer is applied. Unless the attributes of that, the name of which is given, are present, the appellation will not supply them. In the case of the Act of 1880, we have a new lien attempted to be created by the statute, but no means provided or suggested for its enforcement, as in the case of other recognized liens.

With the large number of preferred stockholders and the personnel of them changing from day to day, it is manifest, that to obtain a release of a lien from each of such preferred stockholders is out of the question; and that if the act be given a construction strictly in accordance with its apparent terms, the effect would be to place all of the property of the corporation which was engaged in business extra commerciam and prevent it from doing the very business which it was organized to conduct. .

It can not be assumed that it was the intent of the legislature to do either of these things. What then shall be said to have been the legislative intent in the passage of the Act of 1880? Manifestly the object of the legislation was to throw all proper and reasonable safe guards around the property of a corporation in the interest of the stockholders of its preferred stock, against

the dissipation of the assets and property of the company, and in the event of the insolvency of a corporation to give them certain rights superior even to those of creditors, who became such after the stock was issued. A holder of preferred stock is not a creditor of the corporation; this is conclusively reasoned in the Heller case, and the certificate of the preferred stockholder "merely measures the quantum of his ownership."

The holder of the preferred stock as such is entitled to certain contract rights with reference to the common stock, and to dividends to be declared, which may vary in different cases; but the Act of Assembly goes beyond that point, and gives him an interest in the assets or property of the company, or as it is termed by the statute "a lien" upon them.

This interest is one which the courts will protect, but in protecting it, will not seek to subvert the well known rules of law which inhibit the attempt to place property extra commerciam. They will not, therefore, permit the sale of assets, and especially of such a character as the lot in question, to be consummated between a proposed purchaser and one or two official representatives of a corporation, under which it would be possible to dispose of valuable property for a mere fraction of its true worth; and on the other hand, when it is made manifestly to appear of record that the sale of property inures to the benefit of a corporation, and of the preferred stockholders, they will not require the corporation to carry the burden of unproductive property, which has ceased to be available for the proper and advantageous uses of the corporation.

The evidence in this case shows:

1st. That the number of stockholders is such that a release to be executed by the individual stockholders is a practicable impossibility; it shows,

2nd. That the property involved in this suit is no longer advantageous for the uses of the corporation; it shows,

3rd. That the property is a constant and continuing expense to the corporation; and

4th. That the price at which it was contracted to be sold is the full, fair market value of the property, and under these circumstances, and with this evidence appearing affirmatively of record in this cause, a specific performance of the contract will be decreed.

But it further appears that there was an outstanding mortgage upon this and other property of the Gas Company at the time when the preferred stock of the company was issued, and by the express terms of the statute that indebtedness has a superior claim to any preferred stockholder.

The trust which resulted from such mortgage is a trust which is already under the jurisdiction of this court in another proceeding, and in requiring the contract to be performed, the court will further require that the purchase money be paid to the trustee in that proceeding, for proper disposition there under the orders of this court, deeming that in this way the interest, both of the preferred stockholders and of the bondholders under that prior mortgage, can be best protected and subserved.